IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-00253-M

BUXTON R. BAILEY, P.C. and )
BUXTON REED BAILEY, )
)
Plaintiffs, )
)
v. )
)
CHAD F. WOLF, Acting Secretary, United )
States Department of Homeland Security; )
KENNETH T. CUCCINELLI, Senior )
Official Performing the Duties of the )
Director of United States Citizenship and )
Immigration Services; )
BARBARA Q. VELARDE, Chief, United )
States Citizenship and Immigration Services )
Administrative Appeals Office; and )
MATTHEW T. ALBENCE, Senior Official )
Performing the Duties of the Director of )
United States Immigration and Customs )
Enforcement, )
)
Defendants. )

**OPINION
AND ORDER**

This matter comes before the court on Defendants' motion for summary judgment, filed January 8,

2021. [DE-26] As described fully herein, because the court concludes that the immigration bond at the

center of this dispute was properly forfeited upon Plaintiff Buxton Reed Bailey's failure to deliver the alien

whose liberty the bond secured, the court GRANTS Defendants' motion.

# I.   Background

The complaint alleges [DE-1] and/or the unchallenged administrative record demonstrates [DE-22-1[1]; *see* DE-23] the following: Bailey represented Jose Candelario Gutierrez Ledesma ("Gutierrez") in administrative proceedings under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, before the United States Department of Homeland Security ("DHS"). [DE-1 ¶¶ 12–13; AR 1, 14] In connection with these proceedings, Bailey individually[2] executed a United States Immigration and Customs Enforcement ("ICE") Form I-352 immigration bond (the "Bond") on January 6, 2012 in which DHS[3] and Bailey agreed

---

[1] The administrative record [DE-22-1] will hereafter be cited within this opinion as [AR ##].

[2] Bailey is joined in his lawsuit by his law firm Plaintiff Buxton R. Bailey, P.C. (the "Firm") [DE-1], but Bailey alone executed the Bond in his individual capacity [AR 7–9], and only Bailey therefore undertook legal obligations under the Bond. And because this lawsuit challenges agency actions concerning the Bond that therefore could only injure Bailey as a matter of law, the complaint fails to establish the Firm's standing to sue Defendants. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) ("at an irreducible minimum, Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." (internal quotation marks and citations omitted)); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (noting that 5 U.S.C. § 702 requires "the person claiming a right to sue [to] identify some 'agency action' *that affects him* in the specified fashion" and "show that he has 'suffered legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" (emphasis added)). The Firm's claims are accordingly DISMISSED for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[3] Although Bailey purports to sue the individual Defendants—who each are or were agents of DHS or one of its subordinate executive agencies ICE or the United States Citizenship and Immigration Services ("USCIS")—Bailey makes no allegations regarding any actions undertaken by any individual Defendant within his complaint, but instead makes general allegations regarding government action. [*see* DE-1 at 1 and ¶¶ 3–6 (mentioning individual Defendants' names only in the complaint's caption and in alleging each individual Defendant's federal office)] Because he does not make any specific allegations, were the court to construe Bailey's claims as against Defendants in their individual capacities, the court would dismiss those claims for failing to meet the federal pleading standard. *See Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) (unspecific allegations implausible under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).

The court therefore construes the complaint as suing Defendants in their official capacities alone, meaning that Bailey has effectively sued only DHS and its subordinate agencies. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation

that: (1) DHS would release Gutierrez from custody; and (2) Bailey would undertake—guaranteed by a pledge of $5,000 security—to "cause [Gutierrez] to be produced or to produce himself[] to an immigration officer or an immigration judge of the United States . . . upon each and every written request until exclusion/deportation/removal proceedings in his[] case are finally terminated[.]" [AR 3–10 ("BOND CONDITIONED UPON THE DELIVERY OF AN ALIEN")] The Bond went on to say that if Bailey "fail[ed] to surrender [Gutierrez] in response to a timely demand while the bond remain[ed] in effect, the full amount of the bond . . . [would] become[] due and payable" to the federal government (the "Government"). [AR 8]

On July 7, 2015, DHS sent Bailey an ICE Form I-340 demanding Gutierrez's delivery to ICE's Charlotte, North Carolina office on August 7, 2015, which also specifically stated that failure to deliver Gutierrez could result in forfeiture of the Bond. [DE-1 ¶ 28; AR 63] Bailey admits that he timely received the Form I-340 and that he failed to deliver Gutierrez as demanded therein. [DE-1 ¶¶ 29–30]

DHS then sent Bailey an ICE Form I-323 breach notice on August 7, 2015 stating that the Bond had been breached by a "substantial violation of the conditions of the bond[,]" namely, "failure to deliver" Gutierrez as demanded (the "Breach Determination"). [AR 66] The Breach Determination stated that the Bond's security would accordingly be forfeited to the Government, but noted that Bailey could appeal the Breach Determination by filing a USCIS Form I-290B notice of appeal within 30 days. [AR 66]

---

omitted)); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (internal quotation marks and citations omitted)); *Brown v. GSA*, 425 U.S. 820, 826–27 (1976) ("A suit against an officer of the United States is one against the United States itself if [1] the decree would operate against the sovereign; or [2] if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration; or [3] if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." (internal quotation marks and citations omitted)). Accordingly, and for ease of reference, within this opinion the court will refer collectively to the actions allegedly undertaken and arguments made by Defendants as DHS's actions, DHS's arguments, etc.

After several untimely and otherwise-deficient attempts that were rejected [*see* AR 84–97], DHS ultimately accepted Bailey's appeal of the Breach Determination as properly filed on March 28, 2016. [AR 162, 167] As relevant here, Bailey argued within his memorandum in support of his appeal that there had been no substantial violation of the Bond's conditions because: (1) Bailey had lodged an appeal in Gutierrez's immigration proceedings before the date that Bailey was required to deliver Gutierrez; and (2) Gutierrez had voluntarily departed the country after that date, on December 2, 2015. [AR 79, 143–45]

On December 14, 2017, DHS rendered its decision on Bailey's appeal of the Breach Determination (the "December 2017 Decision"). [AR 168–171 (*Matter of B-R-B-*, ID# 377963 (AAO Dec. 14, 2017))] Within the December 2017 Decision, DHS concluded that Bailey had misinterpreted his obligations under the Bond and that he had "violated the bond's terms when he did not produce [Gutierrez] on August 7, 2015." [AR 170] DHS noted that 8 C.F.R. § 103.6(e) sets forth that an immigration bond is breached only when there is a "substantial violation" of the bond's conditions. [AR 170] DHS invoked the Court of Federal Claims's decision in *Aguilar v. United States*, 124 Fed. Cl. 9 (2015), in which that court said that "[i]n determining whether a breach is a 'substantial' violation, courts have looked to four factors: 1) the extent of the breach; 2) whether the breach was intentional or accidental; 3) whether the breach was in good faith; and 4) whether the obligor took steps to make amends or place himself in compliance." *Id.* at 16 (citing *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 501 (7th Cir. 1995)).[4] Regarding the substantiality of Bailey's violation of the Bond, DHS held as follows:

> Applying the *Aguilar* factors, the record indicates that the extent of the bond violation was substantial. By not delivering [Gutierrez] as requested, [Bailey] violated the bond's primary condition. The bond violation was not accidental, as the demand notice was received by [Bailey] and [Bailey] provided no evidence that [Gutierrez] could not be delivered. Moreover, [Bailey] has not shown that the

---

[4] DHS also invoked *In re Kubacki*, 18 I. & N. Dec. 43, 44, 1981 BIA LEXIS 17 (Regional Comm'r, I. & N. Serv. Jan. 28, 1981) for the same four-factor test set forth in *Aguilar*.

violation was in good faith or that he took steps to comply with the bond's terms, even after the issuance of the breach notice. Thus, the majority of the *Aguilar* factors indicate a substantial violation of the bond's terms.

[AR 171] Because it determined that Bailey had substantially violated the Bond, DHS determined that the Bond had been breached, declined to reinstate the Bond, and dismissed Bailey's appeal. [AR 171]

The cover letter to the December 2017 Decision stated:

> If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both. The requirements for motions are located at 8 C.F.R. § 103.5. Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision.** This time period includes three days added for service by mail.

[AR 168 (emphasis in original)] Bailey mailed a motion asking DHS to reopen or reconsider the December 2017 Decision on another USCIS Form I-290B on January 16, 2018, which was received by DHS on January 17, 2018. [AR 176–80, 82, 223] Tellingly, Bailey first argued within his memorandum in support of his motion to reopen or reconsider that his deadline to file the motion was January 19, 2018. [AR 182] Bailey then argued that his breach of the Bond was not substantial under *Aguilar* in light of the totality of the circumstances surrounding the breach, which Bailey argued DHS had not "fully assess[ed.]" [AR 183] Bailey's memorandum concluded as follows:

> The breach was serious. Upon review of the totality of the unique circumstances including but not limited to the fact that both counsel and obligor are the same as well as a substantial demonstration of good faith including reasonable and timely efforts to reach out to [DHS] the undersigned believes he has shown cause for finding that the breach is not substantial.
>
> The foregoing premises considered [Bailey] respectfully seeks reconsideration and entry of a new decision finding the breach while serious was not in the totality of the circumstances presented substantial and cancelling the aforementioned bond.

[AR 195]

On March 1, 2018, DHS rendered its decision on Bailey's motion to reopen or reconsider the December 2017 Decision (the "March 2018 Decision"). [AR 228 (*Matter of B-R-B-*, ID# 1393816 (AAO Mar. 1, 2018))] Within the March 2018 Decision, DHS ruled as follows:

> A motion must be filed within 33 calendar days of the date that the unfavorable decision was served by mail. 8 C.F.R. §§ 103.5(a)(1)(i); 103.8(b). The filing date is the day [DHS] receives the motion at the designated filing location, not the date [Bailey] mailed the motion. 8 C.F.R. § 103.2(a)(7)(i).

> On December 14, 2017, we dismissed [Bailey]'s appeal and served the unfavorable decision by mail. The decision stated that [Bailey] may file a motion within 33 days. Three days are added to the prescribed time for filing a motion to account for mailing. Although a deadline is moved to the next business day when it falls on a weekend or federal holiday, [Bailey]'s filing deadline was January 16, 2018 and did not fall on a weekend or holiday. [DHS] received the motion on January 17, 2018, which is 34 days after the service date of the unfavorable decision. Accordingly, we are denying the motions as untimely filed.

[AR 228]

Bailey filed his complaint in this court on June 10, 2020. [DE-1] Within his complaint, Bailey brings three causes of action against DHS[5]: (1) a claim that the December 2017 Decision violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"); (2) a claim that the March 2018 Decision violated the APA; and (3) a claim that DHS breached the Bond. [DE-1 ¶¶ 43–93] Bailey's prayer for relief makes clear that all three claims seek to establish a basis whereby this court can determine that Bailey is entitled to get back the $5000 he pledged as security on the Bond.

Following submission of the administrative record [DE-22-1], DHS moved for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") on January 8, 2021 [DE-26], and Bailey moved for summary judgment on January 28, 2021 [DE-30]. Both motions are ripe for adjudication.

---

[5] *See supra* notes 2 and 3.

## II.    Legal standards

### a.  Motions for summary judgment generally

A party moving for summary judgment on a claim or defense bears the burden of "show[ing] that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law" on that claim or defense. Fed. R. Civ. P. 56(a). Within the meaning of Rule 56: (1) a fact is "material" if a jury's decision regarding the fact's existence or nonexistence "might affect the outcome of the suit under the governing law"; and (2) a dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which [the movant] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may demonstrate the absence of a genuine dispute as to a material fact by: (1) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[,]" Fed. R. Civ. P. 56(c)(1)(A); or (2) showing that the record "do[es] not establish the absence or presence of a genuine dispute, or that [the nonmovant] cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(B).

The Fourth Circuit has said:

> When the moving party has carried its burden, the nonmoving party must come forward with evidence which shows more than some metaphysical doubt that genuine and material factual issues exist. A mere scintilla of evidence presented by the nonmoving party is insufficient to circumvent summary judgment. Rather,

the nonmoving party must convince the court that upon the record taken as a whole[6] a rational trier of fact could find for the nonmoving party.

*Austin v. Clark Equip. Co.*, 48 F.3d 833, 836 (4th Cir. 1995) (citations omitted). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and, pursuant to Rule 56(c), to "designate specific facts showing that there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324 (quotation marks omitted).

Where the district court concludes that—based upon the record taken as a whole, when viewed in the light most favorable to the nonmovant as described above—a reasonable jury could render a verdict in favor of the nonmovant, summary judgment must be denied. *Anderson*, 477 U.S. at 248. Where, in light of the same, the court concludes that a jury could not reasonably render a verdict in the nonmovant's favor, summary judgment may be granted. *Id.* at 249–50.

### b. *Motions for summary judgment on APA claims*

The legal standard applied by courts adjudicating motions for summary judgment on claims challenging agency action under the APA, however, is different. As this court has said:

> The Rule 56(a) standard applies differently in an APA claim. A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. Thus, in an APA claim, summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.
>
> . . .
>
> Under the APA, courts must hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In reviewing agency action, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. The inquiry into the facts is to be searching and careful, but the ultimate standard of review is a narrow one. The court is not empowered to

---

[6] The Court need only consider those parts of the record cited by the parties, but it may consider other materials in the record if it so chooses in the exercise of its discretion. Fed. R. Civ. P. 56(c)(3); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 324 (4th Cir. 2017).

substitute its judgment for that of the agency. Courts, however, must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Although the scope of review is narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made.

*Nieves v. McHugh*, 111 F. Supp. 3d 667, 679–80 (E.D.N.C. 2015) (internal quotation marks, ellipses, and citations omitted); *see* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). The court's review of the agency action is to be based on "the full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971).

## III. Analysis

DHS argues that it is entitled to summary judgment on all three of Bailey's claims. The court addresses each in turn.

### a. Bailey's APA claim challenging the December 2017 Decision[7]

In his first claim, Bailey alleges that DHS "acted arbitrarily and capriciously" in the December 2017 Decision dismissing his appeal of the Breach Determination because DHS: (1) "found that there was no accident on the part of [Bailey] in connection with the bond breach"; (2) "found that [Bailey] had not shown that 'the violation was in good faith' . . . or 'that [Bailey] had not taken steps to comply with the bond's terms . . . after the issuance of the breach notice"; and (3) did "not look[] fully at the totality of the circumstances as required by law before rendering it's [sic] decision regarding the substantiality of the

---

[7] The actions of executive departments like DHS can properly be challenged under the APA. *See* 5 U.S.C. § 701(b)(1) (defining "agency" as "each authority of the Government of the United States" with certain exclusions not including executive departments); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1901 (2020) (holding that DHS violated APA).

breach[.]" [DE-1 ¶¶ 43–50] DHS argues that the December 2017 Decision complied with the APA. [DE-27 at 11–21]

8 C.F.R. § 103.6(e) sets forth that an immigration bond "is breached when there has been a substantial violation of the stipulated conditions" of the bond. Central to DHS's motion for summary judgment on Bailey's first claim is whether the administrative record supports DHS's determination within the December 2017 Decision that Bailey had substantially violated the conditions of the Bond and therefore breached the same within the meaning of 8 C.F.R. § 103.6(e).

In *Ruiz-Rivera*—the Seventh Circuit decision that first articulated the *Aguilar* factors that DHS considered within the December 2017 Decision in determining whether Bailey's violation was substantial—the appellant argued that the district court erred by granting summary judgment to the former Immigration and Naturalization Service ("INS") on her claim alleging that INS erroneously decided that a substantial violation of an immigration bond had taken place within the meaning of 8 C.F.R. § 103.6(e). 70 F.3d 498. The court listed the four *Aguilar* factors and found that the first three weighed against the plaintiff, but noted that the last factor—whether the plaintiff took steps to make amends or place himself in compliance with the terms of the bond—was "clearly" established by the record because the plaintiff delivered the relevant immigrant to INS one day late. *Id.* at 501–02. The *Ruiz-Rivera* court affirmed the district court as follows:

> We are required to uphold the decision of the INS unless it is plainly erroneous or inconsistent with the regulation.[8] Our role is not to choose among competing interpretations but to ensure that the INS has followed its own regulations. We may

_____

[8] In *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the Supreme Court harmonized the "plainly erroneous or inconsistent with the regulation" standard first set forth in *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) with 5 U.S.C. § 706, noting that courts "fulfill their duty" under 5 U.S.C. § 706 "by deferring to the agency's reasonable reading" of the relevant regulation under *Seminole Rock* and *Auer v. Robbins*, 519 U.S. 452 (1997), *Seminole Rock*'s successor case. *Kisor*, 139 S. Ct. at 2411, 2419 ("courts do not violate Section 706 by applying *Auer*"); *see also Aguilar*, 124 Fed. Cl. at 16 (equating 5 U.S.C. § 706(2)(A)'s "arbitrary, capricious, [] abuse of discretion, or otherwise not in accordance with law" standard with the "plainly erroneous or inconsistent" standard applied in *Ruiz-Rivera*).

well have decided this case differently than the INS had it been before us in the first instance. However, given our evaluation of the [*Aguilar*] factors, we cannot say that the INS's determination that the bond violation was substantial was plainly erroneous or inconsistent with 8 C.F.R. § 103.6(e). While our finding that [the alien] took steps to comply with the INS order weighs in [the appellant]'s favor, the fact that [the alien]'s failure to report was intentional and lacking good faith clearly militates against [the appellant]'s position. Thus, although [the appellant]'s complete forfeiture of her $ 10,000 bond appears to be unnecessarily harsh, given [the alien]'s attempt to remedy a breach of limited extent, we must defer to the INS's interpretation of its own regulation.

*Id.* at 502–03 (internal quotation marks and citation omitted).

As mentioned above:

A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. . . . In reviewing agency action, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. The inquiry into the facts is to be searching and careful, but the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Nieves*, 111 F. Supp. 3d at 679–80 (internal quotation marks and citation omitted). Accordingly, this court is not empowered to either: (1) decide as a matter of fact whether Bailey established that his failure to deliver Gutierrez was accidental or in good faith or whether Bailey took steps to belatedly comply with the Bond; or (2) weigh the *Aguilar* factors against each other. Rather, *Ruiz-Rivera* demonstrates that DHS's determination that a substantial violation of the Bond took place within the meaning of 8 C.F.R. § 103.6(e) is to be accorded judicial deference, and that such a determination must be upheld on appeal where the determination is supported by one or more of the *Aguilar* factors. Therefore, it is this court's job only to determine whether any *Aguilar* factor that is supported by evidence within the administrative record before DHS at the time of the December 2017 Decision supported DHS's determination that Bailey substantially violated the Bond. *See Aguilar*, 124 Fed. Cl. at 18 (upholding substantial-violation determination and granting summary judgment to the Government where record showed the obligor failed to deliver the alien

based upon a mistake: "Even had ICE concluded that Mr. Aguilar acted in good faith . . . Mr. Aguilar's lack of action after . . . he . . . received notice of the breach[] would be sufficient in and of itself to support ICE's conclusion that he substantially violated the bond."); *Nyuwa v. Field Office Dir.*, 703 F. App'x 462, 462–63 (9th Cir. 2017) (unpublished) (affirming summary judgment for DHS on denial of immigration-bond-breach appeal where there was no genuine dispute that the alien failed to appear when and where demanded, citing *Ruiz-Rivera*).

The administrative record demonstrates that the first *Aguilar* factor, i.e., the extent of the breach of the Bond, supported the December 2017 Decision. The record before this court—which was certified by DHS as "constitut[ing] the administrative record for" the December 2017 Decision [DE-21-1], and which Bailey did not challenge—contained: (1) the Bond stating the obligation to deliver Gutierrez undertaken by Bailey [AR 3–10]; (2) DHS's demand that Bailey deliver Gutierrez [AR 63]; (3) the Breach Notice memorializing that Bailey failed to deliver Gutierrez [AR 66]; and (4) Bailey's memorandum in support of his appeal in which he states that he went in person to the Charlotte ICE office after he received the Breach Notice but does not state that he ever tried to actually deliver Gutierrez to DHS [AR 142; *see also* AR 188–89, 193]. This record evidence supports DHS's determination that "[b]y not delivering [Gutierrez] as requested, [Bailey] violated the bond's primary condition." [AR 171]; *see Ruiz-Rivera*, 70 F.3d at 501 ("The primary obligation of the delivery bond required Ruiz-Rivera to produce her husband whenever and wherever requested by the INS"). Further, Bailey concedes that he failed to deliver Gutierrez within his complaint filed in this court [DE-1 ¶ 48(c) (alleging "acts that . . . would tend to mitigate [Bailey]'s failure to deliver Gutierrez")], and within his memorandum in opposition to DHS's motion for summary judgment Bailey appears to concede that his failure was a "categorically substantial" violation of the Bond:

> As failure to appear upon demand is the singular act that results in a violation, by default it is categorically substantial as set out in 8 C.F.R. 103.6I [sic]. . . . In this

12

case, the singular condition of the delivery bond, appearance on demand, was violated. There is no dispute as to that fact.

[DE-32 at 9–10 (citation omitted)][9]

Under *Ruiz-Rivera*, the court's conclusion that the record supports DHS's determination that the first *Aguilar* factor was established and weighed in favor of finding a substantial violation forecloses further inquiry regarding the December 2017 Decision, particularly in light of Bailey's concession. But the court notes that DHS also considered the remaining *Aguilar* factors[10]—i.e., whether the breach was accidental, whether the breach was in good faith, and whether Bailey took belated steps to comply[11]—and found that

---

[9] Bailey appears to make this concession in an attempt to reframe the question as whether he substantially performed the conditions of the Bond within the meaning of 8 C.F.R. § 103.6(c)(3) after his breach. [*see* DE-32 at 6–7 (arguing that he is entitled to a "*de novo* . . . determination of whether or not [DHS] properly reviewed the appeal of the notice of breach on the delivery bond to see if [Bailey] and [Gutierrez] had pursuant to 8 C.F.R. 103.6(c)(3) and in the totality of the circumstances substantially performed thereon thus excusing the breach and cancelling the bond.")] But since: (1) Bailey's claim is that the December 2017 Decision was legally erroneous; and (2) Bailey did not invoke 8 C.F.R. § 103.6(c)(3) or argue that he had substantially performed within the meaning of that regulation within his memorandum in support of his appeal of Breach Determination (which appeal the December 2017 Decision dismissed) [AR 91 asking that DHS "find that a substantial violation of the terms and conditions of the bond were not breached, reinstate and cancel the bond, [or] in the alternative, that if a breach did occur [to find] that it was not, in the totality of the circumstances, substantial")], Bailey's attempt to change tack to argue substantial performance at this late juncture must be rejected. *See South Carolina v. United States Dep't of Labor*, 795 F.2d 375, 378 (4th Cir. 1986) (rejecting argument not raised to the agency as waived: "It is well established that parties to an agency proceeding must raise at the time appropriate under the agency's practice all issues which it intends to assert on appeal." (internal quotation marks, brackets, and citation omitted).

[10] Bailey's contention that DHS did not "look[] fully at the totality of the circumstances" [DE-1 ¶ 48] accordingly fails. *See Nieves*, 111 F. Supp. 3d at 679 ("In reviewing agency action, the court must consider whether the decision was based on a consideration of *the relevant factors* and whether there has been a clear error of judgment." (emphasis added) (internal quotation marks and citation omitted)).

[11] Bailey does not direct the court's attention to any authority standing for the proposition that where an alien voluntarily departs the country following an immigration-bond obligor's violation of the conditions of the bond, the violation is rendered insubstantial within the meaning of 8 C.F.R. § 103.6(e) as a matter of law. The court declines to adopt the *obiter dictum* from *In re Nguyen*, 15 I. & N. Dec. 176, 1975 BIA LEXIS 58 (Regional Comm'r, I. & N. Serv. Jan. 28, 1975) invoked by Bailey [*see* DE-32 at 17–19]—which concerns substantial performance under 8 C.F.R. § 103.6(c)(3), rather than the substantiality of a violation under 8 C.F.R. § 103.6(e)—as creating such a rule. *See Nguyen*, 15 I. & N. Dec. at 177–78 (dismissing appeal from breach determination because of substantial violation). And in the absence of such a rule, that DHS did not expressly mention Gutierrez's departure therein does not, as Bailey suggests, mean that the December 2017 Decision "is clearly erroneous and must be reversed." [DE-

Bailey had failed to establish these factors. [AR 171] The court does not have the power to substitute its judgment for DHS's and to find otherwise. *Nieves*, 111 F. Supp. 3d at 679 ("A court conducting judicial review under the APA does not resolve factual questions" (internal quotation marks and citation omitted)). And even were the court so empowered and found that the remaining *Aguilar* factors had been established and weighed against finding a substantial violation, the ultimate result would not change under *Ruiz-Rivera* and the deferential APA standard of review. *Id.* at 680 ("The court is not empowered to substitute its judgment for that of the agency." (quoting *Fort Sumter Tours v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir. 1995)).

In sum, following *Ruiz-Rivera*, the court concludes that: (1) DHS did not act arbitrarily or capriciously (or otherwise unlawfully) or abuse its discretion by concluding that Bailey had substantially violated and therefore breached the Bond; and (2) DHS accordingly did not act arbitrarily or capriciously (or otherwise unlawfully) or abuse its discretion by dismissing Bailey's appeal of the Breach Determination in its December 2017 Decision.

### b. *Bailey's APA claim challenging the March 2018 Decision*

In his second claim, Bailey complains regarding "Defendants' arbitrary and capricious invention of a 33-day deadline for appealing decisions served by mail," which resulted in the denial, as untimely, of Bailey's motion asking DHS to reopen or reconsider the December 2017 Decision. [DE-1 ¶ 73] DHS

---

32 at 19]; *see Earle v. United States*, 254 F.2d 384, 387 (2d Cir.) (upholding forfeiture following violation of bond conditions: "The contention is made that since the alien departed without expense to the United States that no damage has been suffered. A bond, providing for liquidated damages, is particularly appropriate under the facts shown, to compensate for the indirect damage done to the national economy, the expense of investigation and the maintenance of an agency to enforce the provision of the Immigration Laws."), *cert. denied*, 358 U.S. 822 (1958); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 103 F. Supp. 3d 1121, 1150 (N.D. Cal. 2015) (holding that an alien's voluntary departure following a breach does not excuse the breach).

argues that its calculation of the relevant deadline was correct and that it did not violate the APA by enforcing it.  [DE-27 at 21–26]

8 C.F.R. § 103.5(a)(1)(i) generally sets forth that: (1) "[a]ny motion to reopen a proceeding before [DHS] filed by an applicant or petitioner[] must be filed within 30 days of the decision that the motion seeks to reopen"; and (2) "[a]ny motion to reconsider an action by [DHS] filed by an applicant or petitioner must be filed within 30 days of the decision that the motion seeks to reconsider." 8 C.F.R. § 103.8(b) provides that "[w]henever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period." "Day" is defined by 8 C.F.R. § 1.2 as follows:

> Day, when computing the period of time for taking any action provided [under DHS's regulations], shall include Saturdays, Sundays, and legal holidays, except that when the last day of the period computed falls on a Saturday, Sunday, or a legal holiday, the period shall run until the end of the next day which is not a Saturday, Sunday, or a legal holiday.

Under 8 C.F.R. § 103.5(a)(4), "[a] motion that does not meet applicable requirements shall be dismissed."

The record demonstrates, and the parties do not dispute, that: (1) the December 2017 Decision that Bailey sought to have DHS reopen or reconsider was mailed to Bailey on December 14, 2017; and (2) Bailey's motion to reopen or reconsider was received by DHS on January 17, 2018, which was the date that the motion was deemed filed under 8 C.F.R. § 103.2(a)(7)(i).  [AR 168–69, 223–26; DE-1 ¶¶ 68–72; DE-27 at 23; DE-32 at 35]

DHS argues that it calculated Bailey's period to move to reopen or reconsider the December 2017 Decision to be 33 days, i.e., the 30-day period generally applicable under 8 C.F.R. § 103.5(a)(1)(i) plus three days added pursuant to 8 C.F.R. § 103.8(b) because the December 2017 Decision was served by mail. [DE-27 at 23]  DHS argues that since: (1) January 16, 2018, the last day of the 33-day period, was neither "a Saturday, Sunday, or a legal holiday[,]" 8 C.F.R. § 1.2; and (2) it did not receive Bailey's motion to

reopen or reconsider until January 17, 2018, which is 34 days after December 14, 2017, Bailey's motion was untimely and therefore properly denied. [DE-27 at 23]

Bailey alleges within his complaint and argues in opposition to DHS's motion for summary judgment that DHS misinterpreted its regulations, and that his motion was timely. [DE-1 ¶¶ 51–73; DE-32 at 26–35] Specifically, Bailey argues that 8 C.F.R. § 103.5(a)(1)(i)'s 30-day period was the relevant "period of time for taking an action" within the meaning of 8 C.F.R. § 1.2, and that since 30 days from December 14, 2017 was January 13, 2018, a Saturday, the "last day of the period" was moved to Tuesday, January 16, 2018, since the 14th was a Sunday and the 15th was the Martin Luther King, Jr. Day holiday. [DE-26 at 35] Only then, under Bailey's interpretation, are 8 C.F.R. § 103.8(b)'s three days for service by mail added to his deadline, making January 19, 2018 the last day he was able to file his motion to reopen or reconsider. [DE-26 at 35] Bailey contends that the regulations are "clear and unambiguous" in setting forth that his method of calculation—under which his motion would have been timely—is correct, and that DHS's use of the "illegal and arbitrary 33 day filing period" requires reversal of the March 2018 Decision [DE-26 at 33, 35].

In *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the Supreme Court made clear that where a regulation is unambiguous—i.e., where the court concludes that "there is only one reasonable construction of a regulation" after "resort[ing] to all the standard tools of interpretation"—the court must apply the regulation's plain meaning, and the question for the court's determination is simply whether the agency applied the reasonable construction or not. 139 S. Ct. at 2414–15. For a number of reasons, the court concludes that the regulations here at issue are unambiguous and that DHS applied them properly.

First of all, DHS's interpretation of 8 C.F.R. § 103.8(b) and 8 C.F.R. § 1.2's tolling provision is resonant with those regulations' purposes, whereas Bailey's interpretation potentially frustrates them. When interpreting regulations, courts are guided by the "basic principle of statutory and regulatory

interpretation . . . that the statute or regulation should be read in context." *Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.*, 980 F.3d 109, 117 (D.C. Cir. 2020). In context, the purpose of 8 C.F.R. § 103.8(b)—like other analogous provisions extending periods to respond to papers served by mail, *e.g.*, Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after being served and service is made [*inter alia*, by mail], 3 days are added after the period would otherwise expire")—is to ensure that litigants served by mail are not disadvantaged relative to others in terms of the time in which they are required to act. *See Lerro v. Quaker Oats Co.*, 84 F.3d 239, 242 (7th Cir. 1996) (former Rule 6(e) (precursor to Rule 6(d)) "is designed to give a litigant approximately the same effective time to respond whether papers are served by hand or by mail. If service is by hand, then the time to respond starts immediately; if service is by mail, the party receives three extra days as an approximation of the time required for mail delivery[.]" (emphasis omitted)). And in context, the purpose 8 C.F.R. § 1.2's tolling provision—like other analogous provisions ensuring that filing deadlines do not fall on weekends or legal holidays, *e.g.*, Fed. R. Civ. P. 6(a)(3)(A) ("if the clerk's office is inaccessible . . . on the last day for filing . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday")—is to ensure that litigants are not required to file documents when courts are closed and the filings cannot be effected. *See id.*, Notes of Advisory Committee on Rules—1985 Amendment ("Rule 6(a) is amended to acknowledge that weather conditions or other events may render the clerk's office inaccessible one or more days. Parties who are obliged to file something with the court during that period should not be penalized if they cannot do so.").

The purposes of both of 8 C.F.R. § 103.8(b) and 8 C.F.R. § 1.2's tolling provision are necessarily served by DHS's interpretation, in which the filing period is simply enlarged to account for potential mail delays and the last day of the period is tolled if necessary to ensure that filing can be effected at any time

during the period. That DHS's interpretation resonates with the regulations' purposes demonstrates its reasonableness.

On the other hand, the purposes of the regulations are potentially frustrated by Bailey's interpretation, in which the filing period can be tolled by 8 C.F.R. § 1.2 when—given the three days that are to be subsequently tacked on pursuant to 8 C.F.R. § 103.8(b)—the tolling may not remedy last-day filing difficulties. What happens if the last of the three days that Bailey argues should be tacked on to the end of the tolled period itself falls on a weekend or legal holiday—is 8 C.F.R. § 1.2's tolling provision applied a second time? If so, the first tolling was superfluous and unjustified. And if not, as Bailey appears to suggest [DE-1 ¶ 66; DE-32 at 33], the tolling provision's purpose is altogether frustrated by its own application. The prospect of such unjustified and perverse results demonstrates why Bailey's interpretation is unreasonable.

Second, all of the authorities that the court has seen support DHS's interpretation of a 33-day filing period. *See Statewide Bonding*, 980 F.3d at 114 ("Under DHS regulations, a notice of bond breach must be appealed to [DHS] within 33 calendar days of the date the notice was mailed." (citing 8 C.F.R. §§ 103.3(a)(2)(i) & 103.8(b)); *Ondiek v. Mayorkas*, No. 2:21-cv-00233, 2021 U.S. Dist. LEXIS 105041, at *10 (W.D. Pa. June 4, 2021) ("The relevant regulations provide Plaintiff with 33, rather than the usual 30, days to respond to the NOID because it was mailed and not served to her in person." (citing 8 C.F.R. § 103.8(b)). Bailey has not directed the court's attention to any authority supporting his interpretation within his complaint or briefing, and the court is aware of no such authority.

For these reasons, the court concludes that: (1) DHS's interpretation is a reasonable construction of 8 C.F.R. § 103.8(b) and 8 C.F.R. § 1.2's tolling provision; and (2) Bailey's interpretation is an unreasonable construction of the same. Because no alternative reasonable construction is before the court, the court concludes that: (3) the regulations are unambiguous within the meaning of *Kisor*; and (4) DHS properly

calculated the deadline pursuant to their plain meaning within the March 2018 Decision when it denied as untimely Bailey's motion to reopen or reconsider the December 2017 Decision.

Moreover, because it concludes that DHS's interpretation of the regulations is reasonable, the court would defer to DHS's interpretation and conclude that DHS did not violate the APA even were Bailey's interpretation also reasonable and the regulations therefore "genuinely ambiguous" within the meaning of *Kisor*. *See Kisor*, 139 S. Ct. at 2410–18 (discussing *Auer* deference at length and noting that courts generally[12] defer to reasonable agency interpretations of "genuinely ambiguous" regulations); *see also Auer*, 519 U.S. 452. In addition to the above-cited cases, other DHS decisions and DHS's own policy manual construe the regulations here at issue in the same manner that DHS did in Bailey's case, which demonstrates consistent application of the regulations that cuts against Bailey's arguments that DHS acted arbitrarily or capriciously in this case. *See Matter of L-I-S-C-, U.S.B-*, ID# 14429, 2015 Immig. Rptr. LEXIS 8424, at *5 (AAO Nov. 4, 2015) ("In order to properly file an appeal, the regulation at 8 C.F.R. § 103.3(a)(2)(i) provides that the affected party or the attorney or representative of record must file the complete appeal within 30 days of service of the unfavorable decision. If the decision was mailed, the appeal must be filed within 33 days."); USCIS-Administrative Appeals Office Practice Manual § 4.6(c) & n.124 ("Appellants must file a motion within 30 days of the unfavorable decision (or 33 days if the decision is mailed)... If a notice is served by mail, three days are automatically added to the stated period to perform the specified act." (available at https://www.uscis.gov/administrative-appeals/aao-practice-manual/chapter-4-motions-

---

[12] The *Kisor* Court said that reasonable agency interpretations can be overruled in certain circumstances, including where the challenged interpretation does not "implicate [the agency's] substantive expertise" and interpreting the regulation "fall[s] more naturally into a judge's bailiwick." 139 S. Ct. at 2417. Although filing deadlines are hardly unique to DHS regulations, and the interpretation of filing deadlines is something that judges routinely undertake, as explained herein, the court agrees that DHS's interpretation of the regulations is the correct interpretation. In the absence of a conflict between DHS's interpretation and its own, the court would not hesitate to apply *Kisor* and uphold the March 2018 Decision under *Auer* even were the regulations genuinely ambiguous.

to-reopen-and-reconsider#4.6)) (both citing 8 C.F.R. § 103.8(b)). And it is worth noting that DHS expressly made Bailey aware of the 33-day deadline in its cover letter accompanying the December 2017 Decision [AR 168], such that Bailey cannot claim that he was meaningfully prejudiced by the deadline's enforcement.

In sum, the court concludes that: (1) DHS did not act arbitrarily or capriciously (or otherwise unlawfully) or abuse its discretion by calculating Bailey's deadline to file his motion to reopen or reconsider the December 2017 Decision as it did, or by and enforcing the deadline; and (2) DHS accordingly did not act arbitrarily or capriciously (or otherwise unlawfully) or abuse its discretion by denying[13] Bailey's motion in the March 2018 Decision.

### c. Bailey's breach-of-contract claim

In his final cause of action, Bailey claims that DHS improperly treated the Bond as forfeited following Bailey's failure to deliver Gutierrez, and thereby breached the Bond. [DE-1 ¶¶ 74–93] Specifically, Bailey alleges that "[i]n order to properly forfeit the bond on a bond breach, the Government must show that it has acted to mitigate the damage caused by the alleged breach, and or show that the breaching party has not cured the breach." [DE-1 ¶ 78] Bailey alleges that: (1) DHS made no effort to take Gutierrez into custody and allowed him to post a voluntary departure bond following Bailey's breach of the immigration bond, demonstrating DHS's failure to mitigate [DE-1 ¶ 86]; and (2) Bailey continued to litigate on Gutierrez's behalf following the breach in connection with the latter's departure, demonstrating Bailey's

---

[13] Although 8 C.F.R. § 103.5(a)(4) says that "[a] motion that does not meet applicable requirements shall be dismissed[,]" rather than denied, the denial of an 8 C.F.R. § 103.5 motion is the functional equivalent of a dismissal where, as here, the deadline for filing another such motion has passed. Accordingly, the court will not disturb DHS's disposition. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("Harmless-error analysis applies in immigration cases. While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached[.]" (internal quotation marks and citations omitted)).

cure of his breach [DE-1 ¶¶ 89–91]. DHS argues that it undertook no duty to mitigate or accept Bailey's efforts to cure under the terms of the Bond.[14] [DE-27 at 26–30]

Because Bailey is suing the federal government on a government contract, federal law controls. *See United States v. Cnty. of Allegheny*, 322 U.S. 174, 183 (1944) ("The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any State."). The Federal Circuit has said that a party bringing a breach-of-contract claim under the Tucker Act "must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

Generally speaking, an immigration bond is a contract between the federal government and the bond obligor in which the government releases an alien from custody in exchange for a promise by the obligor, secured by a sum certain, that he will deliver the alien to DHS whenever it so requests. *See United States v. Minn. Tr. Co.*, 59 F.3d 87, 90 (8th Cir. 1995); *In re Allied Fid. Ins. Co.*, 19 I. & N. Dec. 124, 125, 1984 BIA LEXIS 18 (Comm'r, I. & N. Serv. Mar. 13, 1984). The obligor's failure to deliver the alien results in forfeiture of the sum pledged as security as a form of liquidated damages. *Allied Fid.*, 19 I. & N. Dec. at 126; *Earle*, 254 F.2d at 387. As mentioned above, Bailey alleges within his breach-of-contract claim that DHS breached the Bond by treating Bailey's $5,000 as forfeited without "show[ing] that [DHS] has acted to mitigate the damage caused by the alleged breach, and or show[ing] that [Bailey] has not cured the

---

[14] DHS also argues that Bailey did not exhaust his mitigation argument administratively, but courts have said that administrative exhaustion is not required before an immigration-bond obligor can file suit for breach of contract. *See Statewide Bonding*, 980 F.3d at 119 ("[B]ecause DHS regulations do not require exhaustion of administrative remedies, a bond obligor can skip the administrative appeal process and the invoice dispute resolution process and immediately file suit in federal court for breach of contract.").

breach." [DE-1 ¶ 78]  But DHS directs the court's attention to the Bond [AR 5–10], and argues that DHS did not undertake therein any duties to mitigate or to show the absence of a cure before treating the Bond as forfeited [DE-27 at 27–30].  After reviewing the Bond, the court agrees with DHS that the Bond contains no language indicating that DHS undertook such duties.  Indeed, the Bond does not contain the words "mitigate" or "cure" or any language describing such concepts, but instead is a typical (and boilerplate) immigration bond by which Bailey's $5,000 became forfeited upon his failure to deliver Gutierrez as demanded.  [AR 8 ("If . . . the obligor fails to surrender the alien in response to a timely demand while the bond remains in effect, the full amount of the bond . . . becomes due and payable.")]

By invoking the Bond and showing that it does not require DHS to mitigate Bailey's damages or make any showing concerning cure before treating the Bond as forfeited, DHS has demonstrated the absence of a genuine dispute regarding the "obligation[s] or dut[ies] arising out of the contract" that form the bases for Bailey's breach-of-contract claim as alleged. *San Carlos*, 877 F.2d at 959; *Celotex*, 477 U.S. at 323 (describing summary-judgment movant's "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which [the movant] believes demonstrate the absence of a genuine issue of material fact"); Fed. R. Civ. P. 56(c)(1)(B) (movant may carry its burden by showing "that [the nonmovant] cannot produce admissible evidence to support the fact").  Because DHS carried its initial burden, Bailey was required in his opposition to "come forward with evidence which shows more than some metaphysical doubt that genuine and material factual issues exist" and to "convince the court that upon the record taken as a whole[] a rational trier of fact could find" that DHS had breached the Bond. *Austin*, 48 F.3d at 836 (citations omitted).

Bailey failed to do so.  Bailey's allegations that these duties existed are not supported by the invocation of any persuasive legal authorities or by any evidence within the record indicating that DHS may

have undertaken such duties. Without such support, no reasonable jury could find in Bailey's favor on his breach-of-contract claim. *Id.*

The court accordingly concludes that DHS has "show[n] that there is no genuine dispute" regarding whether it breached the Bond and that DHS is entitled to judgment as a matter of law" on Bailey's breach-of-contract claim. Fed. R. Civ. P. 56(a).

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to all of Bailey's claims. Because Bailey makes precisely the same arguments in support of his own motion for summary judgment as he does in unsuccessfully opposing Defendants' motion for summary judgment [*compare* DE-32 ("PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF PLAINTIFFS RULE 56 MOTION FOR SUMMARY JUDGMENT"), *with* DE-33 (same document)], Bailey's motion for summary judgment [DE-30] is DENIED. The Clerk of Court is DIRECTED to close the case.

SO ORDERED this the _____23_____ day of _____June_____, 2021.


RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE